## GRAND LODGE, K. P. OF NORTH AMERICA, etc., v. ARCHIBALD.

### 6 Div. 237.

Supreme Court of Alabama.

Oct. 12, 1933.

Rehearing Denied Dec. 21, 1933.

Drennen & Perrine, of Birmingham, for appellee.

John W. Altman and Fred G. Koenig, both of Birmingham, for appellant.

THOMAS, Justice.

The plaintiff declared upon a policy of life insurance, and the pleas in short were that it was "not indebted" and that the assured was, as a member of defendant order, "not in financial standing because he had not paid his dues."

The question of the financial standing of a member at the time of his death, within the meaning of the certificate of insurance in such medical benefit or fraternal orders, is of recent consideration by this court. Grand Lodge Knights of Pythias, etc., v. Goodwin (Ala. Sup.) 151 So. 452;[1] Most Worshipful Grand Lodge of Ancient Free & Accepted Masons of Ala. v. Callier, 224 Ala. 364, 370, 140

[1] Post, p. 597.

596 ·

So. 557; Sovereign Camp, W. O. W., v. Reed, 208 Ala. 457, 94 So. 910.

The recent decision in the Goodwin Case, supra, involved like records as those before us, and declared that the payment of dues and fines to the keeper of records and seal in open session where the other officers are at their respective posts, rather than to the master of finance, was not efficacious to preserve the good standing of the member and keep him "financial" or on a "financial basis" within the meaning of the contract, and cannot be · affirmed as a matter of law. It was further observed that the plaintiff was properly allowed to show that it was the practice of the local lodge to pay dues to the keeper of records and seal, as a tendency of interpretation by the lodge of its laws and regulations; so of the receipts issued for dues so paid and which were properly admitted as evidence of payment by that member "to his lodge" of such dues, fines, etc. Article XXXI, Constitution and By-Laws of the Grand Lodge of Knights of Pythias, etc., in evidence; Most Worshipful Grand Lodge, etc., v. Callier, 224 Ala. 364, 140 So. 557.

There was conflict in the evidence as to the nature and extent of assured's disability for the time in question; as to the disability certificate to the lodge; whether or not the chancellor commander or the relief committee of the lodge was duly notified of his sickness; as to the ability of assured to discharge the duties of his employment; and as to the fact that he did or did not do this for the months of March, April, and May, until his death. That is, the evidence has been considered, found to present jury questions, and under the rule will not be disturbed. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738. If the sick benefits under the policy were duly sought, allowable or allowed, and were due the assured, these sums would have been equal to or in excess of the sums or payments that would have accrued against him to that lodge as a member in good standing.

The payments from the Myrtle Lodge and the grand lodge were for members in good standing, and if such was the member's status in the local lodge, the latter was required to remit for him the monthly payments to the endowment department of the grand lodge. The failure of the local lodge for ten days after notice would operate as a suspension of that lodge. Section 5, article XXXI, Constitution of Grand Lodge (Record, page 49). The record shows no such suspension of the local lodge for nonpayment of dues from it on members in good standing. Each member must pay to his lodge and is in default if he does not pay at the first meeting in the succeeding month.

It is provided in article IV, section 4 (Constitution for the Government of Subordinate Lodges, page 63 of the Record), that: "The

Relief Committee shall be composed of the Chancellor Commander, the sitting Master of Work, Vice Chancellor, Prelate and Master of Finance, whose duties it shall be to visit the sick and distressed members and report their actions to the lodge at each meeting. The Vice Chancellor shall be the Chairman and the Prelate the Secretary of the Committee. They shall visit the sick, and for their relief cause an order to be drawn weekly for not less than three dollars for four consecutive weeks, the first payment to be made after the first week's sickness, and two dollars and fifty cents per week thereafter until he is able to resume his usual occupation. The said Relief Committee shall have power to detail members in rotation from the roster to act as nurses and care for the sick. The Keeper of Records and Seal shall officially notify any and all members appointed. It shall be the duty of this Committee to deduct from the benefits a sufficient amount to keep the member in good standing and pay the same over to the Master of Finance. No sick benefits shall be given to any member whose disease is the result of intemperance, immoral or improper conduct, nor who is indebted to his lodge more than two dollars."

Section 2 of article IX (Constitution for the · Government of Subordinate Lodges, Record, page 70), which provides that a member cannot become in arrears while receiving benefits from his lodge, the relief committee being authorized to pay his fines and dues to the master of finance from the amount of his weekly benefits, reads as follows: "A member while receiving benefits from his lodge cannot become in arrears so as to debar him therefrom, the Relief Committee being authorized to pay the Master of Finance from the amount drawn for his weekly benefits a sum sufficient to prevent his becoming in arrears with his lodge to the amount of two dollars. If a member should become in arrears to the amount of two dollars in his fines, dues and assessments and pays the same while sick or disabled, his good standing shall date from his recovery."

It is stipulated that in the event a member becomes disabled from his usual occupation, the sick committee shall provide the weekly benefit and is directed to deduct therefrom $2 a week to prevent the member from becoming in arrears, and this sum covered and exceeded the amount of the monthly charges against that member and those against the local lodge to the grand lodge for that member. It must follow that when the local lodge was obligated to pay the grand lodge and its endowment department $1 per month for the member, and had in its possession the weekly allowance benefit to that member, in excess of its dues, and that it would have to pay the grand lodge for him, the grand lodge may not be heard to say the

local lodge was in good standing but that member was not. The local lodge is the efficient agency and agent of the grand lodge, as was indicated in District Grand Lodge No. 23, United Order of Odd Fellows in America v. Hill, 3 Ala. App. 483, 57 So. 147; Most Worshipful Grand Lodge of Ancient Free & Accepted Masons of Ala. v. Callier, 224 Ala. 364, 368, 140 So. 557; Knights of Pythias v. Withers, 177 U. S. 260, 20 S. Ct. 611, 44 L. Ed. 762; Lewis v. Brotherhood of Locomotive Firemen and Enginemen, 220 Ala. 270, 124 So. 889. It is immaterial by whom the dues and premiums are paid; they inure to the benefit of the assured and the beneficiary. Sovereign Camp, W. O. W., v. Hoomes, 219 Ala. 560, 122 So. 686; New York Life Ins. Co. v. McJunkin (Ala. Sup.) 149 So. 663; [2] Sovereign Camp, W. O. W., v. Graham, 214 Ala. 239, 107 So. 98; Frohlich v. Supreme Lodge, K. P., 225 Ala. 546, 144 So. 11.

We have indicated that the questions of fact as to disability, its report to the local lodge and the right to benefits—benefits that exceeded the monthly dues and charges to the local and grand lodges—were questions for the jury.

The judgment of the lower court is, therefore, affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.